THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ARTHUR BULLOCK, Defendant-Appellant.

Fourth District   No. 12753

Opinion filed July 29, 1976.

Richard J. Wilson, of State Appellate Defender's Office, of Springfield, for appellant.

John Satter, State's Attorney, of Pontiac (G. Michael Prall and Kai A. Wallis, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his convictions upon jury verdicts of deviate sexual assault and a battery committed while in the custody of the Department of Corrections, together with the sentence of 10 to 20 years to be served consecutively to sentences for rape, armed robbery and aggravated battery for which he was then incarcerated.

Upon appeal he argues that he was not proven guilty beyond a reasonable doubt, that prejudicial remarks of the State's Attorney in closing argument require reversal, that the trial court erred in imposing a minimum sentence of 10 years to be served consecutively to the sentence then being served, and that the trial court erred in failing to vacate the conviction of battery which was a part of the same act as that in the deviate sexual assault.

Upon the last issue the prosecution confesses error. Upon the authority of *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1, the confession is approved.

Without setting forth of the evidence in full detail, the prosecuting witness was about 23 years of age and had entered the penitentiary as a prisoner about two days before the events in evidence. Upon the issue of proof beyond a reasonable doubt, we note that neither the identity of the defendant, nor the fact that the defendant met the prosecuting witness and took or persuaded him to enter the "icehouse" and locked the door is in dispute. Defendant does deny performing the act of anal intercourse described in evidence. He testified that he took the prosecuting witness to the "icehouse" to assist the latter in procuring possible employment there, and that he, the defendant, locked the door because the prosecuting witness was not authorized to be in the place. There is corroboration of the prosecuting witness by one Welch, an inmate assigned to the icehouse permanently. The latter testified that he returned to the facility after a short absence and found the door locked. He knocked on the door and

defendant emerged with the prosecuting witness. Welch noted that the latter appeared to have tears in his eyes and to walk with pain.

In addition to his denial, one Carter testified for the defendant that on the date in question he had performed a similar act on the prosecuting witness "in front of the chapel." Such testimony was admitted as impeachment of the prosecuting witness on his testimony as to his physical condition.

An appellate court will not reverse a judgment of conviction on the grounds of insufficient evidence unless it can be said that there is clearly a reasonable and well-founded doubt of the guilt of the accused, and that verdict is palpably contrary to the weight of the evidence. (*People v. Perroni* (1958), 14 Ill. 2d 581, 153 N.E.2d 578.) A conflict in testimony of itself does not establish a reasonable doubt as to defendant's guilt and the credibility and the weight to be given to the testimony of witnesses is a matter for the trier of fact and will not be disturbed unless clearly erroneous. *(People v. Clanton* (1973), 16 Ill. App. 3d 593, 306 N.E.2d 486; *People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230.) The issue of the credibility of the several witnesses testifying in behalf of defendant is essentially a matter for the trier of fact.

Upon the issue of the prejudicial remarks made by the prosecuting attorney, defendant, in his initial brief, quotes the statement:

"One thing I would like to remind you, Mr. Vogel is a very nice attorney and very cooperative and very easy to work with and very pleasant manner, but Mr. Vogel isn't on trial here, Mr. Bullock is. Mr. Vogel has a job to do. He is not doing the job because the man is innocent, he is doing the job because it is his job to do.

MR. VOGEL: I am going to object to that remark, it is very prejudicial.

THE COURT: Overruled."

The prosecution, however, points out that the remarks quoted followed the closing argument of counsel for the defense as follows:

"Mr. Foltz, in the first part of his closing arguments, and incidentally I don't know if that is a good term to use, arguments. What we are really talking about here is the evidence that has been presented and we've tried to be fair about it and to comment on it fairly, but I have a job to do. My job is to represent Mr. Bullock because he is entitled to representation just as any other person would be to the fullest, and it may well be in my closing arguments that I may get carried away to a certain extent, and if I say anything that does not conform with the evidence that was presented through the witnesses that testified, disregard whatever I say because I am not a witness in this case.

I suggest to you not only that Mr. Bullock is innocent, he

wouldn't be here if he didn't think he was innocent and *I wouldn't be defending him if I didn't think he was innocent.*" (Emphasis supplied.)

■■ Defendant's counsel invited the response of the State's Attorney by the expression of his personal belief of the innocence of the defendant without regard to the evidence to be considered by the jury. It is argued here that while such style of argument is improper for the prosecution, this court should repudiate the statement in *People v. McMurray* (1972), 6 Ill. App. 3d 129, 285 N.E.2d 242, *cert. denied,* 411 U.S. 918, 36 L. Ed. 2d 310, 93 S. Ct. 1554, which holds that the remarks of either counsel for defense or for the prosecution concerning personal belief in guilt or innocence are inappropriate. The quoted remarks show that the State's Attorney made no comment upon defendant's indigency or representation which was not first stated by defense counsel. It was not proper to comment upon the latter's personal belief concerning defendant's innocence.

Defendant urges that it was error to impose a minimum term of 10 years to be served consecutively to the terms of 10 to 20 years which defendant was then serving. To sustain the sentence, the prosecution cites *People v. Teague* (1975), 32 Ill. App. 3d 76, 335 N.E.2d 594, *leave to appeal allowed,* 61 Ill. 2d 604. In his reply brief defendant argues that the sentence should be ordered to be served concurrently upon the authority of *People v. Morgan* (1974), 59 Ill. 2d 276, 319 N.E.2d 764.

In *Teague,* defendant was convicted of rape committed while in custody of the Department of Corrections and serving a prior sentence for rape. The court affirmed a sentence of 40 to 75 years to be served consecutively to the sentence of 30 to 60 years then being served. At the time of the sentence on July 20, 1973, section 5—8—4(f) of the Unified Code of Corrections (Ill. Rev. Stat. (1972 Supp.) ch. 38, par. 1005—8—4(f)) provided:

> "A sentence of an offender committed to the Department of Corrections at the time of the commission of the offense shall not commence *until expiration of the sentence* under which he is held by the Department of Corrections. * * * ." (Emphasis supplied.)

The briefs of each party set out the statute in this form.

In *Teague,* the court determined that such provision was mandatory and "requires the sentence for the subsequent offense to be served consecutively with the initial sentence." In the context of a mandatory sentence, the court held to be inapplicable the provision of section 5—8—4(c) in the language:

> "The aggregate minimum period of consecutive sentences shall not exceed twice the lowest minimum term authorized under Section 5—8—1 for the most serious felony involved."

In *People v. Goffman* (1975), 33 Ill. App. 3d 256, 337 N.E.2d 342, *leave to appeal allowed*, 61 Ill. 2d 603, the defendant was sentenced on November 14, 1973, for the murder of a correctional officer while in the custody of the Department of Corrections. The court held that the sentence of 75 to 150 years imposed to run consecutively to the sentence then being served was required to be served consecutively under the provisions of such statute and the authority of *Teague.*

Effective July 1, 1974, section 5—8—4(f) of the Unified Code of Corrections (Ill. Rev. Stat. ch. 38, par. 1005—8—4(f)) was amended to read:

> "A sentence of an offender committed to the Department of Corrections at the time of the commission of the offense shall be served consecutive to the sentence under which he is held by the Department of Corrections." Pub. Act 78—939.

Parallel legislative action is found in section 5—8—4(g), which, effective January 1, 1973, provided:

> "A sentence under * * * for escape or attempted escape shall not commence until the expiration of the term under which the offender is held by the Department of Corrections." Ill. Rev. Stat. 1972 Supp., ch. 38, par. 1005—8—4(g)

Effective, however, on July 1, 1974, the section was amended to read:

> "A sentence under * * * for escape or attempted escape shall be served consecutive to the terms * * * ." Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(g).

The change in the language can only be considered a significant departure from the language of the prior Act which was explicit in stating the mandatory nature of the consecutive sentence. The court, in *Teague*, noted that the problem existing in that appeal would not exist under the amended provision quoted.

In *People v. Chupich* (1973), 53 Ill. 2d 572, 295 N.E.2d 1, defendant was sentenced in 1967 under the then statute. When appeal was considered upon review the sentence scheme of the Illinois Control Substances Act, effective August 16, 1971, was operative. The court examined the language found in that statute (Ill. Rev. Stat. 1971, ch. 56½, par. 1601), and the Unified Code of Corrections (Ill. Rev. Stat. 1972 Supp., ch. 38, par. 1008—2—4, effective January 1, 1973), noting the substantially identical language that if the prosecuted offense has not reached the sentencing stage or final adjudication, then for purposes of sentencing the sentences under "this Act apply if they are less than under the prior law upon which the prior prosecution was commenced."

The court construed the words "final adjudication" to mean the completion of review upon appeal and stated:

> "Each of these provisions states that if the 'sentencing stage or final

adjudication' has not been reached, the sentences under the new act shall apply if they are less than those provided in the old act." 53 Ill. 2d 572, 583-84.

In *People v. Harvey*, 53 Ill. 2d 585, 294 N.E.2d 269, the court followed the reasoning in *Chupich* to hold that the provisions of section 5—8—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1972 Supp., ch. 38, par. 1005—8—1(c)(4)) were applicable to sentences upon offenses committed prior to the effective date of the Unified Code of Corrections. The court said:

"Therefore in compliance with our decision in *Chupich* we hold that defendants may avail themselves of the provisions of the Unified Code of Corrections which mitigate their minimum sentences, for their direct appeals were not finally adjudicated as of the effective date of that statute." 53 Ill. 2d 585, 590.

■■ In *People v. Williams*, 60 Ill. 2d 1, 322 N.E.2d 819, it was held that where a sentence was imposed under the Unified Code of Corrections and the statutory sentence in effect at the time of deciding the appeal were less favorable than the terms of an intervening sentence enacted after the imposition of sentence and repealed before the decision upon appeal, defendant was entitled to the benefit of the most favorable sentence terms provided by the intervening statute. In *People v. King*, 34 Ill. App. 3d 111, 339 N.E.2d 268, *Williams* is construed to mean that defendant is entitled to be sentenced under the most favorable terms which exist during the pendency of the appeal.

We must therefore, conclude, that the amendment effective July 1, 1974, to section 5—8—4(f), provides a mitigation of the prior provision which was construed as a mandatory requirement that the sentence "shall not commence until the expiration of the sentence * * * ," and that neither *Teague* nor *Goffman* are appropriate authority here, but that this sentence must be reviewed as a consecutive sentence provided in section 5—8—4(c) (Ill. Rev. Stat., ch. 38, par. 1005—8—4(c)).

Such review discloses a second problem regarding the sentence imposed here. As of the date of sentence on May 29, 1974, that section included the language:

"The aggregate minimum period of consecutive sentences shall not exceed twice the minimum term authorized under section 5—8—1 for the most serious felony involved. * * * ."

Rape and deviate sexual assault are Class I felonies for which the lowest minimum sentence is 4 years. Thus, at the time of sentence, the consecutive sentences imposed could not exceed the aggregate minimum of 8 years.

As of the time of review that section was amended effective July 1, 1974, to provide:

> "The aggregate minimum period of consecutive sentences shall not exceed the highest minimum term authorized under section 5—8—1 for the two most serious offenses involved."

In terms of the statute now in effect, the consecutive minimum terms of 10 years, a total of 20 years, would now be lawful. *People v. Williams*, 60 Ill. 2d 1, 16, 322 N.E.2d 819, 827.

■■ Applying the rule as stated in *Chupich, Harvey* and *Williams*, we must conclude that the defendant is entitled to have the consecutive sentence reviewed under the provision most favorable to him, which is the provision in effect at the date of sentence, *i.e.*, "the aggregate minimum period of consecutive sentences shall not exceed twice the lowest minimum term authorized * * * ," or in this case 8 years.

■■ In *People v. Morgan*, 59 Ill. 2d 276, 319 N.E.2d 764, defendant was sentenced to 10 to 20 years to be served consecutively to prior sentences imposed, including a sentence of 100 to 199 years for murder. Under the then applicable statute the aggregate minimum consecutive sentences for the several offenses could not exceed 28 years, *i.e.*, twice the statutory minimum sentence or 14 years for murder, the most serious offense. The court determined that when the consecutive sentences imposed could not be administered in compliance with the provisions of section 5—8—4(c), the case on review should be remanded to the trial court with directions to enter an order that the sentences imposed run concurrently.

■■ Upon such authority the judgment of conviction of deviate sexual assault is affirmed, the conviction for battery is reversed, and the cause is remanded to the circuit court with directions to order that the consecutive sentence of 10 to 20 years imposed run concurrently with the respective sentences presently being served and to issue an amended mittimus.

Affirmed in part, reversed in part, and remanded with directions.

CRAVEN and GREEN, JJ., concur.