THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AMYN KAPADIA, Defendant-Appellant.

First District (4th Division)   No. 1—94—3453

Opinion filed June 13, 1996.—Rehearing denied July 12, 1996.

Rita A. Fry, Public Defender, of Chicago (James S. Jacobs, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Clare Wesolik Connolly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

The court found defendant guilty of burglary and arson after a bench trial and sentenced him to an extended concurrent term of 14 years' imprisonment for burglary and arson. We affirm.

Defendant argues on appeal that: (1) he was denied a fair trial because the trial court failed to act impartially at sentencing; (2) the trial court erred when it considered defendant's post-trial statements in aggravation; and (3) the court abused its discretion in sentencing defendant to an extended term.

We first address the fair-trial argument. Defendant argues that the court abandoned the role of an impartial trier of fact when it continued the sentencing hearing and ordered the State to call a witness in aggravation. The witness, a deputy sheriff, overheard defendant make racial slurs directed at the victims and the judge after the court's finding of guilt. The deputy related what he heard to the judge. The judge directed the deputy to inform the prosecution and the defense of the remarks.

At the sentencing hearing, the State asked for substantial prison time. The State argued that the following aggravating factors warranted a substantial sentence: (1) the nature of the offense—starting a fire near a residential area; (2) the defendant's criminal background—two prior felony convictions; and (3) the effect of the offense on the community—fear of religious reprisal.

Before the defense offered evidence in mitigation, the trial judge noted for the record that he was told by a deputy sheriff of comments made by the defendant to the deputy sheriff shortly after the defendant was found guilty. He also noted for the record that he had directed the deputy sheriff to relate the information to the State and defense. The court then asked whether the parties wished to call the deputy as a witness. The State responded: "Not today, your honor. I learned today he was transferred to another courtroom of which I was unaware." The defense responded: "No."

The judge then said that he would not consider the post-trial remarks of the defendant in aggravation. But the defense in mitigation argued that the State had, in fact, offered evidence in aggravation to race and racially motivated activity that was not part of the trial record. In response to the defense making this point, the court continued the sentencing hearing and ordered the deputy sheriff subpoenaed as a witness.

When the sentencing hearing continued, Deputy Joseph Bennet testified in aggravation. He said that when defendant's trial ended he was escorting defendant to the lockup and defendant said: "You can tell the judge for me [defendant's name] that he's a [expletive] and [expletive] the [J]ews." During cross-examination the deputy admitted that defendants frequently make derogatory comments directed at the judiciary. The State then called deputy sheriff Joseph Boyle. Boyle also heard the defendant make anti-Semitic remarks.

The record reveals that the court then considered the evidence presented in aggravation and mitigation, including that of the deputies. The court sentenced the defendant to concurrent extended terms of 14 years for both burglary and arson.

■ The defense argues that the trial judge abused his discretion when he recessed the sentencing hearing and, on his own motion, ordered a witness subpoenaed. We disagree. The implication is that the scope of a judge's inquiry at a sentencing hearing must be confined to weighing evidence in aggravation and mitigation presented by the prosecution and the defense. We have found no case that prohibits a court from summoning a witness at a sentencing hearing on its own motion. To the contrary, Illinois law vests wide discretion in the court at sentencing:

> " 'His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have

made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.' [Citation.] Very recently the court in *Specht v. Patterson*, 386 U.S. 605, 18 L. Ed. 2d 326[, 87 S. Ct. 1209], announced its continuing adherence to *Williams*.

In Illinois, too, we have long held that the judge in determining the character and extent of punishment is not limited to considering only information which would be admissible under the adversary circumstances of a trial. While it must exercise care to insure the accuracy of information considered and to shield itself from what might be the prejudicial effect of improper materials [citation], 'the court is not confined to the evidence showing guilt, for that issue has been settled by the plea.' [Citation.]" *People v. Adkins*, 41 Ill. 2d 297, 300-01, 242 N.E.2d 258 (1968).

A trial judge has wide latitude when receiving relevant evidence at sentencing. See *People v. La Pointe*, 88 Ill. 2d 482, 492, 431 N.E.2d 344 (1981). We find no abuse of discretion in the trial court's decision to order the deputies to testify.

■ At sentencing, the trial court may consider any evidence which is relevant and reliable. *People v. Williams*, 149 Ill. 2d 467, 490, 599 N.E.2d 913 (1992). When imposing sentence, the court must consider the nature of the crime, the character and mentality of the defendant, the effect of the crime on the community, and the message it sends to society. *People v. Kloiber*, 95 Ill. App. 3d 1061, 420 N.E.2d 870 (1981).

■ Here defendant's statements provided insight into defendant's character, mentality, attitude, lack of remorse, and rehabilitative potential. The negative light the statements shed on defendant is consistent with the purpose of hearing evidence in aggravation. We find that the judge did not abandon his role as impartial trier of fact when he ordered the deputy sheriff to be called in aggravation, but insured that the court possessed " 'the fullest information possible concerning the defendant's life and characteristics' " before imposing sentence. *Adkins*, 41 Ill. 2d at 300, quoting *Williams v. New York*, 337 U.S. 241, 247, 93 L. Ed. 1337, 1342, 69 S. Ct. 1079, 1083 (1949).

■ Defendant next argues the court relied upon factors which were not in evidence when it sentenced defendant to an extended term. We disagree.

The record reveals that the defendant was found guilty of burglary and arson. Both are Class 2 felonies. The defendant had two prior felony convictions—one a Class 1 felony, the other a Class 2 felony. Defendant was eligible for an extended term no matter what other evidence was heard. See 730 ILCS 5/5—5—3.2(b)(1) (West 1992).

The record does not support defendant's contention that the court imposed an extended-term sentence because of defendant's slurs aimed at a particular religious group. Rather, read in context, the court's remarks at sentencing weighed defendant's statements in the context of his attitude toward the victims, his lack of remorse, and lack of potential for rehabilitation.

Though we believe a trial judge at sentencing must measure his words carefully and err on the side of restraint, this record does not reveal a trial judge who abused his discretion when he considered the evidence of defendant's anti-Semitic remarks. He may have belabored the point, but the record as a whole reveals a trial judge who was eminently fair to this defendant, both at trial and at sentencing.

■ The defendant also argues that the trial court abused its discretion in sentencing defendant to an extended term because of the disparity between the defendant's sentence and that of his codefendant.

Again, we note that the record reveals that the defendant's two felony convictions made him eligible for an extended-term sentence. The trial court evaluated all the evidence presented to him in aggravation and mitigation. The court's sentence was within the statutory guidelines and was not an abuse of discretion. *People v. O'Neal*, 125 Ill. 2d 291, 531 N.E.2d 366 (1988).

Nor did the court abuse its discretion in failing to consider the disparity of the sentences between codefendants. See *People v. Davenport*, 176 Ill. App. 3d 142, 147, 530 N.E.2d 1118 (1988).

Affirmed.

THEIS and O'BRIEN, JJ., concur.